<table>
<tr><td>UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF COLUMBIA</td><td>**FILED**</td></tr>
</table>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY - 8 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )     Criminal No. 09-106 (RCL)
      v.                           )
                                   )     Civil No. 14-1325 (RCL)
BRANDON LAUREYS,                   )
                                   )
            Defendant.             )
_____)

## MEMORANDUM OPINION

Before the Court are the defendant's motions for a new trial [82] and to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [127].[1] Both motions rest on claims of ineffective assistance of counsel in violation of the Sixth Amendment. Upon consideration of the defendant's motions [82, 127], the government's opposition briefs [102, 128], the defendant's reply briefs [103, 133], the defendant's and government's respective proposed findings of fact and conclusions of law [152, 153], the applicable law, and the entire record herein, the Court will DENY the defendant's motions.

## I.    BACKGROUND

Following defendant Laureys' conviction for crimes related to attempted sexual conduct with a minor on May 27, 2010, Laureys filed an appeal challenging the sufficiency of evidence against him, disputing the lawfulness of the terms of his supervised release, and claiming

---

[1] In his motion for a new trial and at a subsequent evidentiary hearing held July 18, 2014, Laureys presented a number of additional ineffective assistance of counsel claims that were not part of his direct appeal. At the July evidentiary hearing, the Court explained that, in order to argue these new ineffective assistance claims, Laureys should file a § 2255 motion. *See* Def.'s § 2255 Mot. at ¶¶ 5-6, ECF No. 127.

ineffective assistance of counsel. *See generally* Main Brief of Appellant, *United States v. Laureys*, No. 10-3047 (D.C. Cir. Nov. 30, 2010). Laureys raised three issues in his ineffective assistance of counsel claim: (1) failure to call Dr. Frederick Berlin to offer expert testimony that Laureys was a "paraphiliac";[2] (2) failure to call two federal prisoners who could purportedly testify to the meaning of the phrases "perv out" and "down low"; and (3) failure to seek to admit two polygraph test results. *Id.* at 42-43, 46.

On August 19, 2011, the Court of Appeals for the District of Columbia Circuit found that the government's evidence was sufficient "to prove [Laureys'] intent to persuade a minor to engage in sexual activity under [18 U.S.C.] § 2422(b) and to prove his intent to engage in sexual conduct with a minor under [18 U.S.C.] § 2423(b)," and rejected Laureys' contention that the terms of supervised release were unlawful. *United States v. Laureys*, 653 F.3d 27, 31-33, 34-35 (D.C. Cir. 2011). However, the Circuit remanded Laureys' ineffective assistance claims for analysis by this Court. *Id.* at 34.

After a series of continuation motions filed by Laureys, the defendant filed his motion for a new trial on March 25, 2013. In support of his motion, Laureys presented the Court with an expert report from Dr. Berlin dated March 20, 2013. Mot. New Trial Ex. 2. As the government notes, "[d]ue to Dr. Berlin's heavy work schedule and the fact that he stopped working on this matter for an unspecified period of time in early 2013, the doctor did not submit his expert report until . . . approximately 16 months after the first post-remand hearing on November 21, 2011[]. In his report, Dr. Berlin explained that he had diagnosed the defendant as having a sexual disorder,

---

[2] In tandem with his Dr. Berlin argument, the defendant also contends that trial counsel Cary Clennon was deficient for "failing to obtain and review Mr. Laureys' medical records at the outset of the case." Def.'s Mot. New Trial 18, ECF No. 82. The Court shall treat the purported medical records issue as part of the Dr. Berlin issue, since the defendant directly ties Clennon's investigation of his mental health—or lack thereof—to the alleged need to obtain an expert report as to his mental condition. *E.g.*, *id.* at 19-23.

namely pedophilia." Gov't's Opp'n 5, ECF No. 128. The motion also introduced two new issues underlying Laureys' ineffective assistance claim: (4) counsel's failure to investigate text messages allegedly corroborating Laureys' plan to meet a girlfriend on the evening of his encounter with a D.C. police sting operation; and (5) counsel's failure to object to a jury instruction on Count One of the Indictment. *See* Mot. New Trial 36-48.

Finally, at a hearing held on July 18, 2014, defense counsel raised two more ineffective assistance issues: counsel's failure to call (6) Dr. Ronald Butters and (7) Dr. Karen Young to offer expert testimony. The four additional reasons offered in support of Laureys' ineffective assistance claim were effectively combined with the three original arguments presented on appeal via Laureys' § 2255 motion, ECF No. 127. *See supra* n.1. Following two days of evidentiary hearings in December 2014, at which Dr. Butters, Dr. Berlin, and trial counsel Cary Clennon testified, the parties submitted their respective proposed findings of fact and conclusions of law to the Court on February 18, 2015. ECF Nos. 152, 153.

## II.    LEGAL STANDARD

Under § 2255, Laureys may move to vacate his conviction "upon the ground that the sentence was imposed in violation of the Constitution." 28 U.S.C. § 2255(a). Laureys bears the burden of proof, and must demonstrate his right to relief by a preponderance of the evidence. *See, e.g.*, *United States v. Pollard*, 602 F. Supp. 2d 165, 168 (D.D.C. 2009).[3] Here, Laureys claims that his sentenced was imposed in violation of the Sixth Amendment right to assistance of counsel. Mot. 1, ECF No. 127.

---

[3] District Court judges in this Circuit have settled upon a "preponderance of the evidence" standard for evaluating § 2255 claims, citing *United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973) for support. *See, e.g., Smith v. United States*, 02 Civ. 1807, 2005 WL 1313445, at *2 (D.D.C. June 1, 2005).

To prevail on a claim of ineffective assistance of counsel, Laureys must establish (1) that counsel's performance was *deficient*—that is, that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"—and (2) that counsel's "deficient performance *prejudiced* the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984) (emphasis added). To establish that counsel's performance was deficient, Laureys must show that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. Laureys must overcome the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id.* at 689; *see also Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) ("[T]he standard of review is highly deferential."). To establish that counsel's deficient performance prejudiced the defense, Laureys must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (noting that a reasonable probability "requires a 'substantial,' not just 'conceivable,' likelihood of a different result" (citation omitted)).

## III.   ANALYSIS

### A. Polygraph Tests, Inmate Witnesses, Text Messages, and Dr. Young

In the proposed findings of fact and conclusions of law ("proposed findings") that the defendant submitted to the Court, Laureys omits any ineffective assistance arguments regarding the two possibly exculpatory polygraph test results, the two prisoners who could purportedly testify to the meaning of the phrases "perv out" and "down low," the text messages referring to Laureys' plan to meet a girlfriend on the night of his arrest in this case, and the possible testimony of Dr. Young. Given that the purpose of such a filing is to present the Court with a comprehensive

summary of the facts and legal arguments in favor of a party's position, the Court can only conclude that Laureys effectively *concedes* that these four issues do not actually support a claim of ineffective assistance of counsel. Nevertheless, the Court will briefly address each issue's lack of merit.

First, this Circuit has been skeptical of any value that may be derived from polygraph testing. *See, e.g., Almerfedi v. Obama*, 654 F.3d 1, 8 n.1 (D.C. Cir. 2011) (Rogers, J., concurring) ("[t]he reliability of [polygraph] evidence is not beyond doubt"); *United States v. Skeens*, 494 F.2d 1050, 1053 (D.C. Cir. 1974) (noting the inadmissibility of polygraph tests in criminal trials); *Graham v. Mukasey*, 608 F. Supp. 2d 50, 55 (D.D.C. 2009) (observing that polygraph results "usually are not [admissible at trial]") (collecting cases). The Supreme Court has explained that "there is simply no consensus that polygraph evidence is reliable," and that "the scientific community remains extremely polarized about the reliability of polygraph techniques." *United States v. Scheffer*, 523 U.S. 303, 309 (1998). While the Court was unable to glean Judge Robertson's position on polygraph testing from past decisions,[4] this member of the Court, in particular, does not find sufficient reliability in polygraphs to admit test results as evidence in criminal trials. Therefore, Clennon's alleged failure to seek to admit two polygraph results cannot be considered deficient.

Second, in his proposed findings, Laureys never cites a failure to call two inmates who could testify to the meaning of the phrases "perv out" and "down low." Even if he had, Laureys would be unable to demonstrate the type of reversible prejudice necessary for a finding of ineffectiveness by pointing to the purported testimony of incarcerated men regarding sexual vernacular. These prisoners are not experts, and would have undoubtedly faced severe credibility

---

[4] Judge Robertson oversaw the trial in this case.

issues on account of their respective convictions related to child sexual abuse. *See* Clennon Aff. ¶ 46, ECF No. 137. Moreover, Laureys puts forth no declarations from these prisoners stating that they would even testify on his behalf.

Third, while the defendant claims that Clennon's "failure" to request his text messages with a girlfriend should go toward a finding of ineffective assistance, Mot. New Trial 37, Laureys disregards such a line of argument in his proposed findings. Nonetheless, the fact that the defendant may have discussed dinner plans with his girlfriend on the night of his arrest does not, on its face, make it meaningfully less likely that Laureys intended to engage in illicit sexual conduct with a child prior to dinner. The non sequitur nature of Laureys' reasoning would not persuade the Court to find that Clennon acted deficiently as to the text messages in question.

Fourth, defense counsel raised for the first time at the July 18, 2014 hearing the argument that Clennon was also ineffective for failing to call Dr. Young, a purported expert in internet sexual addiction. Yet Dr. Young appears nowhere in Laureys' proposed findings, and the defendant never called Dr. Young to testify at the evidentiary hearing in December 2014. The mere fact that Laureys was unable to bring such an expert to court after the many months leading up to the evidentiary hearing indicates that Clennon cannot be considered unreasonable—let alone deficient—for a similar "failure." *See* Hr'g Tr. 8:7-8, Oct. 9, 2014, ECF No. 141 (Defense counsel states that "[w]e're willing to forego Dr. Young if she can't be available. She's too difficult."); *see also* Clennon Aff. at 23 (Dr. Young states in an email to Clennon that "this is not the kind of case that [she] would handle unfortunately."). With no existing record attesting to whatever Dr. Young's testimony may have been with regard to the defendant's conduct, the Court would be unable to find that a failure to call such an expert constitutes ineffective assistance of counsel.

## B. Jury Instruction

As in his motion for a new trial, Mot. New Trial 41-48, Laureys raises in his proposed findings, Def.'s Proposed Findings 16-18, Clennon's "failure" to object to jury instructions related to § 2422(b) as evidence of ineffective assistance. For support, Laureys cites a dissent from his 2011 appeal, in which Judge Brown "object[ed] sua sponte to the district court's instruction that the jury could convict under § 2422(b) if the Government proved Laureys knowingly attempted to persuade an adult to arrange for a child to engage in sexual activity." *Laureys*, 653 F.3d at 32. In 2014—four years after this Court, Judge Robertson presiding, issued the jury instructions in question here—the Circuit largely adopted the rationale underlying Judge Brown's dissent. *See United States v. Hite*, 769 F.3d 1154, 1163 n.4 (D.C. Cir. 2014). Laureys further argues that "Trial Counsel admitted that, with the benefit of hindsight, he should have objected to that jury instruction." Def.'s Proposed Findings 18 (citing Evid. Hr'g Tr. 172:3-8, Dec. 16, 2014, ECF No. 155).

However, "[a] fair assessment of attorney performance requires that *every effort be made to eliminate the distorting effects of hindsight*, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689 (emphasis added). The government is correct that when "assessing whether [trial counsel] performed deficiently in agreeing to a stipulated jury instruction on the § 2422(b) count, the Court must examine the state of the law as it was when counsel was litigating the matter." As the majority of the Circuit panel explained in its *Laureys* decision, "the district court's instructions contradicted no precedents of this [Circuit] or the Supreme Court." 653 F.3d at 32; *see also* Def.'s Proposed Findings 16 (conceding that "at the time of Mr. Laureys' trial, the law was still unclear in this Circuit"). The Constitution does not require defense counsel to be

7

legal prognosticators. *See* Gov't's Proposed Findings 37 (collecting cases for the proposition that "an attorney is not deficient for failing to predict a change in the law"). Thus, Clennon's lack of objection to a jury instruction reasonably perceived to be lawful in 2010, *see* Clennon Aff. ¶ 49, cannot constitute ineffective assistance under the Sixth Amendment.

### C. Dr. Butters

At the July 18, 2014 hearing, defense counsel stated Laureys' intention to call Dr. Butters to testify that the term "perv out," which Laureys used throughout his online conversation with an undercover detective, refers to adult homosexual activity of a fantasy nature rather than an intent to engage in illicit sexual conduct with a child. *See* Expert Proffer 1, ECF No. 125. The defendant states that "the primary purpose of [Dr. Butters'] testimony is to buttress Dr. Berlin's conclusions and potentially to rebut the government's argument or evidence refuting Dr. Berlin's testimony, not to establish new ineffectiveness claims." Def.'s Reply 3, ECF No. 133. Yet the defendant actually appears to be raising a separate issue of a failure to call a linguistic expert, similar to Laureys' argument regarding Clennon's failure to call the two jailhouse witnesses.

Based on Dr. Butters' testimony at the December 5 evidentiary hearing, the Court cannot possibly deem Clennon constitutionally ineffective for failing to call a linguistic expert such as Dr. Butters. While Dr. Butters contended that "perv out" is primarily used in a homosexual context, his deduction is not founded on any level of expertise regarding the specific term in question on which the Court—let alone a jury—could rely. Dr. Butters, who stated that he has only served as an expert for the defense in child enticement cases, conceded that he did not have prior exposure to the term "perv out" before being contacted by Laureys' counsel in 2014. Dr. Butters further explained that his "research" only consisted of internet searches and a review of exhibits in this case. In fact, the transcripts reviewed by Dr. Butters featured Laureys' handwritten annotations

such as "wrongly convicted" or "please help." Furthermore, Dr. Butters did not research whether the term is used by pedophiles, specifically, and never personally met with Laureys. The Court cannot conclude that the purported findings of a linguistic expert, based primarily on an internet search and not on any personal experience with the term "perv out," create a substantial likelihood of a different result in this case. *See Cullen*, 131 S. Ct. at 1403.

### D. Dr. Berlin

Ultimately, Laureys' ineffective assistance of counsel claim largely centers on his argument that Clennon was deficient by failing to obtain an expert report from Dr. Berlin and, instead, calling the defendant to testify on his own behalf—testimony that, by all accounts, "sealed [] Laureys' fate." Mot. New Trial 19. The Court rejects this final argument, and hereby adopts the government's accurate depiction of events related to Dr. Berlin as described in its proposed findings. Gov't's Proposed Findings 23-25. Indeed, any "failure" to obtain Dr. Berlin's testimony as to Laureys' mental condition was not for lack of effort on Clennon's part, but rather was due to a combination of mutual misunderstandings and Dr. Berlin's exceptionally busy schedule. Gov't's Proposed Findings 23-24 (citing trial counsel's four requests for continuances—three of which were successful—to accommodate Dr. Berlin's schedule); Mot. New Trial 8-12.

Over the course of many months, Clennon sought to provide Dr. Berlin with the necessary information to prepare an expert report. Gov't's Proposed Findings 23-24. However, Dr. Berlin insisted he could be of no help, despite interviewing Laureys in September 2009, receiving notes from the defendant's prior therapy sessions, and accepting compensation for his services, unless he also reviewed an analysis of the defendant's computer files. *See* Clennon Aff. 35 (email from Dr. Berlin's assistant, Feb. 1, 2010). While there was surely an unfortunate delay in Clennon's receipt of certain computer files requested by Dr. Berlin, there is nothing in the record that indicates

the delay was due to Clennon's deficient conduct. *See* Clennon Aff. ¶¶ 18-19, 21-23, 27, 29, 35-36. Even after obtaining Laureys' computer data and receiving word that the trial was, once more, continued to May 25, 2010, Dr. Berlin notified Clennon that he would still be unable to complete an assessment of Laureys. Mot. New Trial Ex. 5 at 5-6 (letter from Dr. Berlin to Clennon, Mar. 15, 2010). In fact, the slow pace of Dr. Berlin's work on this case was not limited to the pre-trial phase, as the defendant only received an expert report from Dr. Berlin *sixteen months* after the first post-remand status conference. Consequently, Clennon's efforts—albeit unsuccessful—to satisfy the needs of a renowned doctor in the field of sexual disorders do not amount to ineffective assistance of counsel.[5]

Despite a more developed record in this case today than at the time of Laureys' initial appeal, the core of Judge Henderson's dissent regarding the defendant's ineffective assistance claim still holds true. As Judge Henderson explained, "[t]hat Laureys'[] trial counsel did not call an expert witness who, according to the record, was not prepared to testify hardly renders his representation deficient." *Laureys*, 653 F.3d at 36. Moreover, it is difficult to "fathom how [Dr.] Berlin's proposed testimony could have possibly aided Laureys'[] case." *Id.* On appeal, Laureys argued that Dr. Berlin "would have opined that [the defendant] is a paraphiliac." Main Brief of Appellant 42. Yet "[a] description of paraphilia would have simply emphasized Laureys'[] 'recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving . . . children or other nonconsenting persons.'" *Laureys*, 653 F.3d at 36 (citations omitted). While Laureys' proposed findings steer clear of a subsequent mention of paraphilia, Berlin's testimony

---

[5] As mentioned above, *supra* n.2, the defendant also argued that Clennon failed to investigate Laureys' mental health. *See* Mot. New Trial 18. While Laureys links this argument directly to the alleged failure to obtain an expert report from Dr. Berlin, *id.* at 19-23, the Court notes its satisfaction with Clennon's testimony regarding his investigation into Laureys' mental health issues—testimony that the defendant did not refute. Evid. Hr'g Tr. 130:6-131:9, Dec. 16, 2014.

at the December 2014 evidentiary hearing failed to reveal any convincing value for Laureys'

defense. If anything, the Court finds that Berlin's testimony would likely do Laureys more harm

than good. *E.g.*, Evid. Hr'g Tr. 45:17-25 (pointing out that it is a "difficult thing . . . to determine"

whether Laureys intended to engage in sexual conduct with a child or engage in fantasy with an

adult); *id.* at 121:18-122:1 (opting not to diagnose Laureys with pedophilia *limited to fantasy only*

for a "variety of reasons," including the fact that Laureys had previously pleaded guilty to

"attempting to meet up with a child" in 2006); *see also* Mot. New Trial Ex. 5 at 9 (stating that "it

is very unlikely, even with time to review the additional information, that there could be a

successful mental health defense in this case").[6]

In his motion for a new trial, Laureys makes a passing reference to Clennon's "fail[ure] to

obtain a substitute expert when it was clear that [Dr. Berlin] would be unable to testify at trial."

Mot. New Trial 18. There is no question that, *ideally*, an expert would have testified at trial on

Laureys' behalf. Yet the defendant does not satisfy a claim of ineffective assistance of counsel

merely by demonstrating imperfection. The burden on a defendant bringing such a Sixth

Amendment accusation is, of course, substantial, since "it is all too easy for a court, examining

counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of

counsel was unreasonable." *Strickland*, 466 U.S. at 689. Here, after exerting considerable effort

---

[6] At the evidentiary hearing on December 16, 2014 and in his proposed findings, Laureys floats an additional theory of ineffective assistance: that because Clennon "limited Dr. Berlin's task to providing a diminished capacity defense, no expert testimony was ever provided." Def.'s Proposed Findings 29. Yet even if Clennon's communications with Dr. Berlin contained references to a proposed defense strategy focusing on Laureys' intent, *e.g.*, *id.* at 11 & n.5, the Court is unconvinced that a medical expert would "limit" his evaluation of a patient to the conjectures of a lawyer with no medical training. If Dr. Berlin believed in the existence of an alternative defense related to Laureys' decisionmaking capacity, the Court has no doubt that he would have presented such an alternative to trial counsel, regardless of counsel's prior mentions of a possible "diminished capacity" defense. The Court agrees with the government that, *at most*, the "diminished capacity" issue represented a miscommunication between Clennon and Dr. Berlin. *See* Gov't's Proposed Findings 24-25 n.7. Perhaps, with the benefit of hindsight, current counsel disagrees with trial counsel's defense strategy. But the real obstacle to receiving expert testimony from Dr. Berlin—as it always has been—was the doctor's availability.

11

to acquire Dr. Berlin's services over many months only to have the doctor decline to help fewer than seven weeks before trial, Clennon was left with little opportunity to find a replacement.[7] Given what the Court now knows about the length of time apparently required for Dr. Berlin to be helpful as an expert, coupled with Dr. Berlin's statement that "it is very unlikely . . . that there could be a successful mental health defense in this case," the Court is sympathetic to Clennon's predicament on the eve of trial.

Finally, Laureys' argument regarding Dr. Berlin depends upon the Court accepting the following counterfactual: testimony from Dr. Berlin would have obviated the need for Laureys' self-damaging testimony. *E.g.*, Mot. New Trial 27-30; Def.'s Proposed Findings 18-20. Such speculative reasoning cannot survive the "presumption" of effective assistance. *Strickland*, 466 U.S. at 689 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."). There is no evidence, other than the defendant's self-serving assertion, that Laureys would *not* have sought to testify if Dr. Berlin were able to take the stand at his trial. Even if Clennon were deficient in failing to call Dr. Berlin to testify–and he was not—the Court cannot jump to the conclusion that such testimony would have convinced Laureys not to exercise his right to testify.

## IV.    CONCLUSION

Perhaps the strongest advocate for Clennon's effectiveness was Judge Robertson. In fact, upon observing Clennon's performance throughout the pretrial phase, Judge Robertson went as far as to note that "[i]t certainly couldn't be ineffective assistance of counsel. Mr. Clennon is going all out on this thing." Hr'g Tr. 14:7-11, Oct. 29, 2009, ECF No. 48; *see also id.* at 3:1-4 ("I want

---

[7] Clennon notes in his affidavit that, one week prior to trial, he requested expert assistance from Dr. Neil Blumberg, but was turned down. Clennon Aff. ¶ 42.

to express my appreciation to Mr. Clennon, and indeed my admiration for the thoroughness and appropriate zealousness of his defense in this case."). While such commentary is surely not dispositive, real-time observations from the judge presiding over the original case are not without meaning. And the existing record in this case gives the Court no reason to doubt Judge Robertson's favorable evaluation of trial counsel.

Thus, for the foregoing reasons, the Court DENIES the defendant's motions for a new trial [82] and to vacate, set aside, or correct his sentence pursuant to § 2255 [127].

A separate Order consistent with this Memorandum Opinion shall issue this date.

5/8/15
Date

ROYCE C. LAMBERTH
United States District Judge